## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
### FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| BENJAMIN C. HECHT, | : | |
| 3564 11TH STREET, N.W. | : | |
| WASHINGTON, D.C. 20010 | : | |
| PHONE: 301-221-5027 | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| VS. | : | CIVIL ACTION NO. 13-1530 |
| | : | |
| LAW SCHOOL ADMISSION COUNCIL | : | |
| 662 PENN STREET | : | |
| NEWTOWN, PA 18940 | : | |
| | : | |
| DEFENDANT. | : | |

_____ :

## COMPLAINT

Plaintiff Benjamin Hecht ("Hecht"), by and through his undersigned counsel, commences this complaint against the Law School Admission Council ("LSAC" or "Defendant"), for violating the federal non-discrimination statute, namely the Americans With Disabilities Act ("ADA") that requires qualified private entities to offer examinations in a place and manner that is accessible to individuals with disabilities and best ensures that the examination accurately reflects, not the examinees' disability, but rather his or her aptitude, achievement level, or whatever other factor the examination purports to measure.

## INTRODUCTION

1.     This action challenges the discriminatory denial of reasonable testing accommodations as requested by plaintiff, Mr. Hecht, on the Law School Admission Test ("LSAT").  The discrimination challenged herein has deprived Mr. Hecht, a person with

disabilities who has been affected by a lifelong and well documented neurologic and cognitive disorders, from competing for admission to law school on a level playing field with his non-disabled peers.  These civil rights violations are ongoing and include, amongst other things, discrimination and failure to provide appropriate and reasonable accommodations in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq. as amended ("ADA") and the Department of Justice's implementing regulations 28 C.F.R. Part 36.  Immediate and permanent injunctive relief is necessary to ensure that Mr. Hecht is no longer excluded from, deterred from or otherwise discriminated against in taking the LSAT.

2.     Defendant, LSAC has failed to provide plaintiff, Mr. Hecht reasonable testing accommodations, which includes 50 % extended time (18 extra minutes) on all sections of the LSAT, extra breaks (10 minutes between each section); and use of a computer and printer for the Writing Sample. Mr. Hecht submitted to the LSAC extensive documentation of his disabilities and entitlement to accommodations as required by Defendant's accommodation application policies. The LSAC has refused to make the requested testing accommodations necessary to best ensure that the LSAT reflects Mr. Hecht's aptitude rather than his disability, despite his well documented history of neurologic and cognitive disabilities dating back to early elementary school and the use of comparable accommodations throughout his entire education and on multiple standardized tests. Mr. Hecht brings this action to enforce his statutory rights to reasonable accommodations and equal educational opportunities under the ADA.

3.     Defendant LSAC administers the LSAT, a standardized screening exam and prerequisite for most law schools in the United States.  The LSAC has the legal, educational, and professional responsibility to offer reasonable testing accommodations on the LSAT to individuals with disabilities. Such accommodations, which are neither expensive nor difficult to

provide, allow individuals with disabilities like Mr. Hecht to demonstrate their real aptitude and skill.

## JURISDICTION AND VENUE

4.     This action arises under the laws of the United States, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et. seq. Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the provisions of 42 U.S.C § 2000a-3(a), providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA.

5.     This Court has jurisdiction to issue a Declaratory Judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the LSAT in this district and has sufficient contacts for personal jurisdiction.  Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this District and Mr. Hecht resides in this District.

## THE PARTIES

7.     Mr. Hecht is a 25 year old individual who is currently employed as an analyst for a financial consulting firm in Washington, D.C.  He is a person with disabilities under the ADA and is entitled to federal protection and appropriate accommodations from Defendant. Mr. Hecht requested accommodations including extended time on the LSAT, and Defendant denied his request.

8.      Plaintiff's impairments substantially limit him in the performance of numerous major life activities including, but not limited to thinking, concentrating, learning, organizing, reading, cognitive processing, and test taking.

9.      Defendant LSAC is a Delaware non-profit corporation with its principal office in Newtown, Bucks County, Pennsylvania.  LSAC has over 200 member law schools in the United States, Canada and Australia, including all the American Bar Association ("ABA") accredited law schools.  LSAC prepares and administers the Law School Admission Test ("LSAT"), the professional examination required for admission to all ABA accredited law schools.  LSAC is a private entity that offers examinations related to applications to post-secondary education, and as such is subject to the non-discrimination and reasonable accommodation requirements of the ADA. The LSAC administers the LSAT throughout the country.

### FACTUAL ALLEGATIONS

10.     Mr. Hecht is a 2011 college graduate who plans to apply and attend an ABA approved law school commencing in the fall 2014-2015 school year.

11.     A prerequisite to admission to all ABA approved law schools is that all law school applicants must take the LSAT, and those scores are reported to the law schools to which students apply for admission.

### Mr. Hecht's History of Disability, Accommodations and Remediation

12.     As a young child, Mr. Hecht experienced several cognitive and neurologic conditions.  These conditions included constant and repetitive tics such as throat clearing and sniffling.  He further exhibited fidgety behavior, impulsivity and over activity.

13.     When he was seven, he was evaluated and treated by a physician affiliated with Children's National Medical Center (formerly DC Children's Hospital). He was diagnosed with

Tourette's Syndrome  (TS). TS is a neurologic disorder characterized by repetitive involuntary movements and vocalizations called tics.  Mr. Hecht was  prescribed Luvox, Guanfacine and other medications to address his tics and other behavioral conditions.

14.     During the following school year at the age of eight, Mr. Hecht continued to exhibit difficulty at school and home with concentrating and focusing his attention.  These conditions impacted his ability to complete schoolwork in a timely manner.  Teachers reported that Mr. Hecht had trouble listening to instructions; was very impulsive in social situations; and demonstrated inflexibility and trouble transitioning or shifting from a given train of thought. Teachers also noted compulsive behavior and difficulty sitting for work for long periods of time.

15.     Kathleen P. Atmore, Psy.D conducted a neuropsychological evaluation of Mr. Hecht when he was eight years old (1996) in order to assess his academic and cognitive profile and to obtain recommendations regarding educational placement and programing.  Dr. Atmore conducted an evaluation over the course of two days, which included multiple standardized assessments, a review of school records, feedback from teachers, clinical interviews with Mr. Hecht and his parents, and clinical observations. The findings, conclusions and recommendations were stated in a comprehensive evaluation report.

16.     Throughout Dr. Atmore's evaluation Mr. Hecht demonstrated behaviors consistent with symptoms of ADHD. He exhibited restlessness, fidgety behavior, and motoric over-activity.  It was further noted that he exhibited periods of sniffling and throat clearing and anxiety.  Dr. Atmore conducted several cognitive, neurologic, behavioral and educational assessments.

17.     Dr. Atmore recognized that Mr. Hecht demonstrated gifted intellectual abilities; however, because of deficits in attention, executive functioning and anxiety control,

accommodations and modifications at school were necessary.  Dr. Atmore recommended several accommodations and modifications including untimed tests; de-emphasis on mandatory homework and agreed upon maximum time effort for homework assignments; and the ability to move about the classroom when appropriate.  Dr. Atmore further recommended several strategies for delivering classroom instruction and medical consultation to further address Mr. Hecht's attention disorder, tics and anxiety.

18.     While Mr. Hecht was in middle school, he continued to exhibit difficulties that impacted his education.  When he was transitioning from 7th to 8th grade, he struggled socially and with maturity.  Consequently, Mr. Hecht's parents decided to have him retained for a second year of 7th grade.

19.     For Mr. Hecht's second year of 7th grade (2001), his parents enrolled him in the McLean School, which is an independent school that serves students with different learning styles by emphasizing small classrooms and individualized learning profiles.

20.     The McLean School requested an evaluation before school commenced in order to develop an appropriate curriculum and educational program.  Dr. Atwood conducted another evaluation of Mr. Hecht in August 2001.

21.     Dr. Atwood's evaluation report noted that Mr. Hecht continued under the care of a physician, who also prescribed several medications for TS, attention disorder, and executive functioning weaknesses.  Dr. Atmore further noted that while Mr. Hecht showed some exceptional skills, he demonstrated weakness in tasks that required focused, attention and mental organization.  This weakness was evident on timed measures, particularly when compared to untimed measures.

22.     Dr. Atmore's evaluation concluded that Mr. Hecht continued to exhibit weaknesses in the areas of attention, executive functioning, work speed, and automaticity (i.e. fluency), despite the successful use of compensatory strategies.  Dr. Atmore noted that the McLean School was an appropriate placement.

23.      Dr. Atmore recommended accommodations such as extended time on tests and exams and avoidance of multiple tests in a given day.  She further made specific recommendations for instructional strategies and methods, organization, and homework completion.

24.     Mr. Hecht attended the McLean School for 7th and 8th grades and was approved to receive accommodations, which included extended time for tests and examinations. An individualized program for Mr. Hecht's learning style was also implemented.

25.     In 9th grade (2003-2004), Mr. Hecht transitioned to high school where he attended the Sidwell Friends School, an independent school.

26.     Janell Schweickert, Ph.D. of the Wake Kendall Educational & Psychological Consultants ("Wake Kendall") conducted an evaluation at the end of 9th grade (2004) to provide an update to Mr. Hecht's cognitive and educational profile. Dr. Schweickert's evaluation took place over the course of three days and involved a review of records, clinical observations and clinical interviews.  Dr. Schweickert's findings, conclusions and recommendation were set forth in a written evaluation report.

27.     Dr. Schweickert's report indicated that Mr. Hecht's parents and teachers reported that he exhibited problems with impulse control that disrupted class behavior. She further reported that Mr. Hecht was easily distracted and had difficulty concentrating, particularly when

reading. Dr. Schweickert observed that Mr. Hecht's work speed was often very slow and, as a result, he completed fewer tasks than usual given the time that was available for the assessment.

28.      Dr. Schweickert utilized several standard measures to assess Mr. Hecht's intellectual abilities.  On the Wechsler Intelligence Scale for Children – 4th Ed. (WISC-IV) he received a Verbal Comprehension Index score of 128, falling into the 97th %ile of his normative age group.  By sharp contrast his WISC –IV Processing Speed Index score, which measures one's ability to make efficient decisions based on visual information, was a 73, which fell into the 4th %ile of his age group. His processing speed was further assessed by the Woodcock-Johnson Test of Abilities, where he scored in the 15%ile for his normative age group. Throughout Dr. Schweickert's evaluation report, she noted that Mr. Hecht worked accurately but was very slow and inefficient.

29.      Dr. Schweickert concluded that because his areas of cognitive difficulty have a broad effect on his academic functioning, the significant consequences of his difficulties with processing speed and organization are best described as Learning Disability, NOS (DSM-IV: 315.9)[1]. She further noted that Mr. Hecht displayed clear signs that he was significantly hampered by behavioral difficulties related to the neurological effects of Tourette's Disorder, impulse control, reduced frustration tolerance and anxiety. Dr. Schweickert reported that people with Tourette's Disorder often need to exert tremendous conscious control in order to dampen their tics and impulsive behaviors, which medications cannot fully ameliorate.

30.      Dr. Schweickert recommended several accommodations including extended time on tests and exams in order to address and control the behavioral impulsivity and frustration that interferes with his work as well as to accommodate his difficulties with processing speed,

---

[1] DSM-IV refers to the Diagnostic Statistical Manual of Mental Disorder 4th Edition.

fluency and efficiency. She further recommended additional breaks during standardized testing

to allow him to regroup between sections of an exam. Additional recommended strategies

included a tutor for study skill to assist with working more efficiently, access to a word processor

for test and examinations, and tape-recorded books.

31.     Sidwell Friends School provided several accommodations throughout Mr. Hecht's

high school matriculation, which included extended time.

32.     The College Board approved Mr. Hecht in December 2004 to receive 50%

extended time (i.e. time and a half) on all its standardized examinations (i.e. the SAT I and SAT

Subject Test).  Mr. Hecht was administered a total of nine separate standardized examinations

with extended time.[2]

33.     In the Fall 2007, Mr. Hecht started his college education at Yale University

("Yale").  He registered in Yale's Resource Office on Disabilities in his freshman year.

Throughout Mr. Hecht's matriculation at Yale, he received accommodations, which included

50% extended time and the use of a computer to type long responses.  Mr. Hecht consistently

utilized these approved accommodations.

34.     In the Spring 2011, Mr. Hecht graduated from Yale.  Since graduating from Yale,

Mr. Hecht has worked in several different jobs and is currently an analyst for a financial

consulting firm.

35.     In order to provide more current assessment data in connection with his request

for accommodations on the LSAT, Mr. Hecht was re-evaluated in April 2013 by Alexandra

---

[2] In March 2004, Mr. Hecht was administered the SAT I under standard conditions.  After he was
approved in December 2004 by the College Board for extended time, he took the SAT I in
January 2005 and May 2006, increasing his total score by 150 points and 190 points (11% and
15% increase) from his unaccommodated exam. He also was approved for and took seven
additional SAT Subject Tests with extended time.

Cargo, Ph.D. of the Wake Kendall group.  Dr. Cargo's evaluation took place over the course of

three days.  Dr. Cargo's evaluation included a review of prior evaluations and school records, a

clinical interview, clinical observations, and the administration of approximately thirteen

different standardized neuropsychological assessments.  The results, findings, conclusions and

recommendations of Dr. Cargo's evaluation were set forth in a written evaluation report.

36.     Dr. Cargo's report stated the following observations and findings:

a.     On the Wechsler Adult Intelligence Scale-4[th] ed. (WAIS-IV), Mr. Hecht

demonstrated very superior performance on the Verbal Comprehension

Index, (150 or 99.9 %ile) and on the Perceptual Reasoning Index (121 or

92%ile), but showed a substantial spread on the Processing Speed Index,

94 (34%ile).  Dr. Cargo reported that this 56 point spread is statistically

significant and occurs in less than 1% of the normative sample.

b.     On the Woodcock-Johnson Test of Abilities, Processing Speed

assessments placed Mr. Hecht in the 37th %ile.

c.     Mr. Hecht demonstrated exceptional skill on untimed assessments;

however on timed assessment, because of slow visual processing, his

performance dramatically declined. For example, on the Scholastic

Abilities Test for Adults (SATA) reading comprehension section, he

completed only 30 of the 60 items, scoring in the 25%ile for his age.

When given more than double the extended time to complete the

assessment, he scored above the 99th %ile. On the Nelson Denny Reading

Test, he did not complete the assessment in the standard time and scored

in the 54%ile; however, when given extended time he scored in the 92%ile.

d.   On various assessments of attention and executive functioning[3] he demonstrated difficulty with sustained attention for both visual and auditory information.

37.   Dr. Cargo concluded in her report that Mr. Hecht's visual processing speed continues to be significantly slow, especially when he must scan rows of symbols, including letters and numbers.

38.   Dr. Cargo concluded in her evaluation report that Mr. Hecht's diagnoses include: Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (DSM-IV 314.01); Tourette's Disorder (DSM-IV 307.23); Obsessive Compulsive Disorder (DSM-IV 300.3) and Anxiety Disorder, Not Otherwise Specified (DSM-IV 300.00).

39.   Dr. Cargo recommended several accommodations for the LSAT, including the following: extended time (50%); additional breaks between sections of the exam; a quiet setting for the administration of the exam; and the use of a computer for lengthy written responses.

40.   Mr. Hecht was further evaluated by Paul George Prunier, M.D. Dr. Prunier, a board certified psychiatrist, has treated Mr. Hecht for over ten years for ADHD, TS and anxiety. Dr. Prunier reported that among other things that: "Because of his difficulty focusing, concentrating, sustain his attention, and completing his work in an efficient manner, he will need extended time (at least time and a half but preferably double time) for tests; will need longer rest periods between individual tests; and because of these extensions, he will even need to extend the test process from one day to several days…."

---

[3] Executive functioning refers to the mental organizational and control processes associated with focusing, planning, strategizing, organizing and decision making.

**The Law School Admission Test (LSAT)**

41.     LSAT is a standardized test required for admission to all ABA approved law schools, most Canadian law schools, and many non-ABA approved law schools.

42.     The LSAT purports to be a standard measure of acquired reading and verbal reasoning skills that are considered essential for success in law school.

43.     The LSAC submits that the LSAT is the only common measure by which the ability of all prospective law students can be measured fairly.  Moreover, LSAC issues research reports available to law schools and the public, which maintain that the LSAT is a better predictor of law school performance than the undergraduate grade point average.

44.     The LSAT consists of five 35-minute sections of multiple-choice questions. Four of the five sections contribute to the test taker's score.  Each section consists of twenty-three to twenty-seven questions.   A thirty-five minute writing sample is also administered, which LSAC does not score but provides copies to the law school to which the test taker applies.

45.     The multiple choice questions fall into three categories of question types which are as follows:

a.      "Reading comprehension questions," which the LSAT asserts measure one's ability to read with understanding and insight.  The section contains four highly complex reading passages containing approximately 55 to 65 lines of text followed by five to eight questions about each passage.

b.      "Analytical reasoning questions" for which multiple choice answers are based on a set of statements, rules or conditions that describe relationships among entities such as persons, places, things or events.  This section, often referred to as "logic games," typically contains four short written passages followed by five to seven questions about each passage.

c.      "Logical reasoning" questions are included in two sections of the LSAT. Each logical reading question requires the test taker to read a short passage and then answer one or two questions about the passage.

46.     The LSAT is administered only four times a year. The LSAC and most law schools advise to take the LSAT in June or October. It is particularly important when applying to the most competitive law schools that the test taker takes the exam in June or October of the year before the applicant seeks admission.

**LSAC'S Denial of Hecht's Request For Accommodations**

47.     Prior to the June 2013 administration of the LSAT, Mr. Hecht timely submitted the requisite documentation to the LSAC to request accommodations. Included with Mr. Hecht's request for accommodations were reports from his evaluators, proof of accommodations from college and high school, and proof of accommodations from the College Board.

48.     The documentation provided to LSAC in connection with the June 2013 LSAT substantially complied with the documentation required by LSAC for requesting accommodations on the LSAT.  This documentation demonstrated that Mr. Hecht's evaluators recommended accommodations, including extended time on tests and standardized examinations, and that he previously received extended time on several standardized examinations.

49.     By letter dated May 23, 2013, Defendant LSAC informed Mr. Hecht that his request was denied and that no accommodations were approved. The Defendant sent this letter to Mr. Hecht after its self-imposed deadline for seeking reconsideration for the June 2013 examination.

50.     The May 23, 2013 letter also stated, "[t]here was insufficient evidence of deficits in learning that warrant the provision of extended time on the LSAT. Your performance on

academic measures, including the January 2005 SAT without accommodations, was not impaired."[4]  Defendant's letter also cited a few psychometric scores from untimed assessments included in the evaluation report that Mr. Hecht submitted and noted that these scores were in the superior range.

51.     Mr. Hecht attempted to take the June 2013 LSAT without accommodations. During the June 2013 LSAT, Mr. Hecht was unable to focus and to control his Tourette behavior (i.e. tics including clearing throat and cracking knuckles). His attempts to suppress his tics made if more difficult to concentrate and simply made attending to the examination more difficult.  As the examination progressed, his anxiety and level of distraction and fatigue increased. He also experienced difficulties completing portions of the examination.

52.     As a proximate result of not being provided with accommodations, Mr. Hecht was not administered the LSAT in a manner that best ensured that his aptitude or achievement level was accurately demonstrated. Within a few days of the administration of the examination, Mr. Hecht canceled his score as provided in LSAC's rules and procedures.

53.     In August 2013, Mr. Hecht retained the counsel of Charles Weiner, Esquire to prepare a request for reconsideration of Defendant's denial of his request for accommodations. Plaintiff is seeking to take the October 2013 LSAT with the necessary accommodations and apply for admission to law school for the Fall 2014.

54.     Charles Weiner, Esquire, Counsel for Mr. Hecht, submitted a letter to LSAC's General Counsel, Joan E. VanTol, dated September 2, 2013.  Counsel's letter requested

---

[4] Mr. Hecht in fact received 50% extended time on the January 2005 SAT.  As will be set forth below, Defendant was later provided a letter from the College Board, which corrected its earlier correspondence (which failed to state that Mr. Hecht received accommodations on the January 2005 SAT) and noted that Mr. Hecht was granted 50% extended time for all College Board examinations effective December 2004.

reconsideration of LSAC's earlier denial. Counsel's letter summarized Mr. Hecht's history of prior evaluations and use of accommodations; summarized current evaluations; and summarized the standards under the ADA.  Counsel's letter further requested that the LSAC provide the accommodations recommended by Mr. Hecht's evaluators and provided on other standardized examinations.

55.     Submitted with counsel's letter was further documentation supporting Mr. Hecht's request for accommodations. The documentation submitted included the following:

a.  LSAC's Candidate Form w/ personal statement;

b.  LSAC's Evaluator Form;

c.  Alexandra P. Cargo, Ph.D. Neuropsychological Evaluation – April 2013;

d.  Alexandra P. Cargo, Ph.D. letter dated 8-26-2013 responding to LSAC denial;

e.  Paul George Prunier, M.D. medical letter dated 11-12-2012;

f.  Janell Schweickert, Ph.D. Psychoeducational Assessment – November 2004;

g.  Kathleen P. Atmore, Psy.D. Psychoeducational Evaluation – August 2001;

h.  Anne Lazarus, Psychologist F.S.P. Psychological assessment – June 2001;

i.  Kathleen P. Atmore, Psy.D. Neuropsychological Evaluation-December 1996;

j.  College Board letter 2-27-2013 letter regarding approved accommodations;

k.  College Board letter 7-10-2013 letter regarding accommodations and correcting 2-27-2013 letter;

l.  College Board examination results;

m.  Sidwell Friends School letter dated 3-12-2013;

n.  Yale Resource Office on Disabilities letter dated 11-7-2012 regarding the accommodation approved during Mr. Hecht's matriculation.

56.    By letter dated September 18, 2013, LSAC through its General Counsel, Joan E. VanTol maintained its denial of Mr. Hecht's requests for accommodations.  Ms. VanTol wrote: "Upon consideration and review of the additional documentation included with your letter, as well [sic.] Mr. Hecht's answer sheet from the June 2013 administration of the LSAT, LSAC will provide a private testing room at the October 2013 test administration as an accommodation. *This accommodation should alleviate Mr. Hecht's concerns about devoting any effort to suppressing his tics, thus allowing him to focus on taking the test without worrying about 'bothering' other test takers."* (Emphasis added)

57.    Mr. VanTol's letter further stated: "Despite [Mr. Hecht's] history of accommodations, the current documentation does not support his request for extended test time or breaks between sections of the test.… If there is no specific evidence of an adverse impact and no clinical or pervasive functional limitations, then no accommodations are warranted."

58.    Contrary to Ms. VanTol's assertion, documentation was provided to LSAC including current and historical medical evidence of functional impairments in thinking, concentration, learning, organization, reading, processing speed and test taking; recommended accommodations from trained professionals who evaluated Mr. Hecht; and a lengthy history of accommodations in academic settings and on numerous standardized higher education entrance examinations.

59.    On information and belief, LSAC has not submitted Mr. Hecht's documentation to a competent, qualified independent professional trained in neuropsychological assessment and Tourette's Syndrome to review Mr. Hecht's documentation supporting his request for accommodations.

60.     In spite of never having met Mr. Hecht, never having tested him or never having evaluated him, LSAC ignored multiple qualified professionals who observed and evaluated Mr. Hecht and his history of receiving extended time in school and other standardized examinations.

61.     The LSAC is the only entity that has refused to provide Mr. Hecht with the accommodation of extended time.

62.     The requested accommodations, including extended time, are necessary to appropriately account for the condition and manner of Mr. Hecht's limitations.  The test modification (i.e. a private testing room) offered by LSAC is not appropriately accommodating Mr. Hecht's disabilities and he will be unable to demonstrate his actual knowledge, skills and abilities on this examination and in law school without the requested accommodations.

63.     Mr. Hecht has an indisputable disability that substantially limits his major life activities of impaired cognitive thinking, concentration, learning, organization, reading, processing speed and test taking.  Under the ADA, Mr. Hecht is entitled to the accommodation of extended time, a private room, breaks between each section, and use of a computer and printer for the written section. The LSAC's refusal to provide the requested reasonable accommodations for persons with disabilities is a violation of Mr. Hecht's rights under the ADA.

64.     Mr. Hecht requires extra time and the other requested accommodations on the LSAT, not to gain an advantage, but to attempt to level the playing field, because his functional limitations impact his ability to take a strictly timed standardized examination in a way that non-disabled test takers do not experience.

65.     If Mr. Hecht does not receive the requested reasonable accommodations on the LSAT, he will be denied the rights provided by the ADA, which mandates that the LSAC offer

the LSAT in a place and manner that is accessible to him and best ensures that the examination

accurately reflects, not his disability, but rather Mr. Hecht´s aptitude or achievement level.

66.     If Mr. Hecht does not take the October 2013 LSAT with appropriate

accommodations, he will be irreparably harmed because he will lose the extensive time he

invested in preparation for the LSAT; he will be prevented from competing on a level playing

field with other students applying to law school; and he will be unreasonably delayed or

prevented from taking LSAT and applying to law school.

67.     The accommodations requested by Mr. Hecht, including extended time on the

LSAT, are the type of accommodations that have been granted to other test takers with

disabilities in prior administrations of the LSAT.

68.     Mr. Hecht through counsel, Charles Weiner, Esquire, notified the LSAC of its

violation of the ADA and requested that it remedy this matter by providing the requested

accommodations.  Mr. Hecht through counsel has also advised the LSAC of his intention to file

this litigation if the matter is not remedied.

### COUNT I – VIOLATION OF THE ADA-REQUEST FOR INJUNCTIVE RELIEF

69.     Mr. Hecht incorporates by reference the foregoing paragraphs as if set forth

herein.

70.     Mr. Hecht is an individual with a disability within the meaning of the ADA, 42

U.S.C. §12101 et. seq.  He is a qualified individual within the meaning of the ADA in that he

meets all the eligibility criteria for taking the LSAT.

71.     Mr. Hecht requires reasonable accommodations to participate in a fair, full, and

equal basis on the LSAT.  The modifications that Mr. Hecht needs would not impose a

fundamental alteration, but would attempt to level the field and allow his aptitude and abilities to be fairly and accurately measured.

72.     Defendant LSAC administers the LSAT examination, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

73.     The ADA, 42 U.S.C. § 12189, requires Defendant LSAT to offer these examinations in a manner accessible to persons with disabilities.

74.     In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the applicability of the ADA to those Congress originally intended to protect. 42 U.S.C. §12010(b)(6).  The regulations promulgated by the EEOC provide that "[t]he primary purpose of the ADAAA (the ADA Amendments Act) is to make it easier for people with disabilities  to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 28 U.S.C. §1630.1(c)(4).

75.     Title III of the ADA, which is enforced by the U.S. Department of Justice, states in pertinent part, "It is discriminatory to fail to make reasonable modifications to policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 28 U.S.C. §12182(b)(2)(A)(ii)

76.     Title III regulations mandate that a private entity offering examinations modify its examinations as necessary to best ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion.  28 C.F.R. §§ 36.309(b) & (c).

77.     Title III regulations prohibit Defendant LSAC from administering the LSAT without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

78.     The Regulations mandate that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan). 28 C.F.R. §36.309(b)(1)(v).

79.     The Regulations further provide, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 784.

80.     Defendant LSAC has discriminated and continues to discriminate against Mr. Hecht on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the LSAT in violation of the ADA, specifically 42 U.S.C. §12182, §12189 and 28 C.F.R.§36.309.

81.     Defendant LSAC's discriminatory policy and practices violate Mr. Hecht's rights under the ADA and the regulations promulgated thereunder. LSAC's discriminatory policies and practices include but are not limited to:

a. Failure to give considerable weight to Mr. Hecht's evaluators contrary to 28 C.F.R. pt. 36, app. A, at 784.

b. Failure to give "considerable weight to documentation of past modifications, accommodations… or services received in similar testing situations" contrary to 28 C.F.R.§36.309(b)(1)(v).

c. Failure to give considerable weight to documentation of past modifications, accommodation or services provided in response to an IEP or services provided pursuant to section 504 of the Rehabilitation Act of 1973 in violation of 28 C.F.R.§36.309(b)(1)(v).

d. Failure to make reasonable requests for documentation contrary to 28 C.F.R. §36.309(b)(1)(iv).

e. Failure to provide a clear explanation for LSAC's denial.

f. Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations to Mr. Hecht's disabilities.

g. Failure to have Mr. Hecht's documentation supporting their request for accommodations reviewed by a competent independent evaluator.

h. Failure to make the LSAT accessible to Mr. Hecht in violation of the ADA, 42 U.S.C. §12189.

i. Failure to administer the LSAT "so as to best ensure" that the exam results would accurately reflect Mr. Hecht's aptitude rather than their disabilities in violation of 28 C.F.R. §36.309(b)(1)(i).

j. Failure to consider Mr. Hecht's requests for reasonable accommodations without regard to the ameliorative effects of mitigating measures in violation of 42 U.S.C. 12102(4).

82. Mr. Hecht will be irreparably harmed if the LSAC continues its illegal refusal to provide him the reasonable test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Mr. Hecht's ADA rights and compelling the LSAC to provide the requested accommodation.

83. The LSAC will not be harmed in any way if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

84.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the LSAC to continue its unlawful refusal to provide Mr. Hecht with the ADA accommodations to which he is justly entitled.

85.     As a result of the LSAC's violation of the ADA, Mr. Hecht has suffered or will suffer great injury, including, but not limited to, lost time in preparation for the examination, lost employment opportunities, lost educational opportunities, out-of-pocket pecuniary losses, and emotional distress and anguish.

86.     LSAC's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Mr. Hecht has no adequate remedy at law. Consequently, Mr. Hecht is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

WHEREFORE, Plaintiff requests relief as set forth below.


## COUNT II - DECLARATORY RELIEF

87.     Mr. Hecht incorporates by reference the foregoing paragraphs as if set forth herein.

88.     A present and actual controversy exists between Plaintiff Mr. Hecht and Defendant LSAC concerning their rights and respective duties.  Mr. Hecht contends that LSAC violated and continues to violate his rights under the Americans with Disabilities Act as amended, 42 U.S.C. sections 12101, *et seq*.  Based upon information and belief, LSAC denies these allegations, thus Declaratory Relief is therefore necessary and appropriate.

89.     Mr. Hecht seeks a judicial declaration of the rights and duties of the respective parties accordingly.

WHEREFORE, Plaintiff requests relief as set forth below.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     An Order compelling the LSAC, or those acting as agents for or in concert with it, to immediately cease and desist from its refusal to accommodate Mr. Hecht's request for accommodations on the LSAT and ordering that the LSAC immediately comply with the ADA by allowing Mr. Hecht the requested accommodations on the October 2013 LSAT administration and all future administrations, which shall include: 18 minutes extra time on multiple choice sections; 18 minutes extra time on the writing sample; 10 minute breaks between each section; a separate room for the exam; use of a computer and printer for the Writing Sample.

B.     An Order compelling the LSAC to report and certify Mr. Hecht's score on the October 2013 LSAT administration once taken with the above accommodations;

C.     Make the above Order permanent and that such order be made applicable to all future examinations administered by the LSAC, if any, taken by Mr. Hecht.

D.     Enter judgment in the form of a permanent injunctive order against Defendant directing LSAC to immediately cease and desist from its refusal to accommodate Mr. Hecht's requests for accommodations on the October 2013 LSAT and any future LSAT administration for which Mr. Hecht is otherwise entitled to sit and for which he has made proper application and ordering LSAC to comply with the ADA by allowing Mr. Hecht the requested accommodations.

E.     An Order granting such other injunctive relief as may be appropriate.

F.     An Order granting declaratory relief.

G.     Award for attorneys' fees, costs and expenses of suit incurred.

H.     Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted


_____/s/ William John Phelan, IV_____
William John Phelan, IV, Esquire
Bar No. 983139
THE GOWEN GROUP LAW OFFICE, PLLC
1325 G. Street, N.W., Suite 500
Washington, D.C. 20005
Tel: 202-380-9355
Fax: 202-499-1370
william.phelan@gowengroup.com


_____/s/ Charles Weiner_____

(Pro Hac Vice Admission pending)      Charles Weiner, Esquire
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel:  (267) 685-6311
 Fax:  (215) 604-1507
charles@charleswi\nerlaw.com